```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA
```

PATRICIA LYNN MCCLURE,           )
                                 )
           Plaintiff,            )
                                 )
v.                               )      Case No. CIV-15-358-RAW-KEW
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social           )
Security Administration,         )
                                 )
           Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Patricia Lynn McClure (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 2, 1964 and was 49 years old at the time of the ALJ's decision. Claimant completed her high school education and two years of college. Claimant has worked in the past as an administrative assistant, secretary, customer service representative, and accounting clerk. Claimant alleges an inability to work beginning February 22, 2012 due to limitations resulting from back and neck problems, arthritis, carpal tunnel syndrome,

hypertension, anxiety, and depression.

**Procedural History**

On June 18, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 4, 2013, Administrative Law Judge Lantz McClain ("ALJ") conducted a hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On January 27, 2014, the ALJ issued an unfavorable decision. On July 21, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) selectively disregarding evidence which contradicted the ALJ's functional findings; and (2) failing to perform a proper credibility assessment.

**Consideration of the Medical Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post thumb and carpal tunnel surgery on the right, recurrent right carpal tunnel syndrome, history of back and neck pain, and status post fibular fracture. (Tr. 16). The ALJ concluded that Claimant retained the RFC to perform less than a full range of light work. In so doing, he found Claimant could lift and carry 20 pounds occasionally and ten pounds frequently, was able to stand or walk for at least six hours in an eight hour workday, and was able to sit for at least six hours in an eight hour workday. The ALJ also found the limitation of no more than frequent use of Claimant's hands for such repetitive tasks as keyboarding. (Tr. 17).

After consulting with a vocational expert, the ALJ concluded Claimant could perform her past relevant work as an administrative assistant, customer service representative, and accounting clerk. (Tr. 21). The vocational expert also testified Claimant could perform the representative job of motel clerk, which the ALJ concluded existed in sufficient numbers both regionally and nationally. (Tr. 22). As a result, the ALJ found Claimant was not disabled from February 22, 2012 through the date of the decision. Id.

Claimant argues the ALJ failed to discuss certain evidence of his back condition which demonstrated a greater level of restriction then found in the RFC.  Primarily, Claimant contends the ALJ failed to consider the MRI evidence pertaining to Claimant's lumbar and cervical spine problems.  In November of 2010, Claimant underwent an MRI scan based upon her complaints of cervical pain with radiculopathy.  The scan revealed at C4-C5, disc/osteophyte complex was identified, asymmetric on the right.  A portion extended into the proximal right neural foramen.  Mild right but no significant left foraminal stenosis was noted.  Moderate spinal canal stenosis was also noted.  The changes had worsened since an examination in 2007 with an increase in spinal canal stenosis.  At C5-C6, the MRI showed disc/osteophyte complex was identified.  The condition was mild with no significant spinal canal or foraminal stenosis, developing since the prior examination.  At C6-C7, disc/osteophyte complex was identified with moderate canal stenosis and moderate right and severe left foraminal stenosis.  The changes had worsened as compared to the prior examination with an increase in spinal canal stenosis as well as left formaminal stenosis.  The final impression was that Claimant suffered from worsening cervical spondylosis at multiple levels.  (Tr. 254-55).

In November of 2010, Claimant also underwent an MRI of her lumbar spine precipitated by her claims of low back pain with

radiculopathy.  The MRI revealed at L3-L4 that Claimant had a broad-based disc bulge, mild degenerative changes of the facet joings, mild canal stenosis, and no significant foraminal stenosis.  At L4-L5, a broad-based disc bulge was identified as well as mild degenerative changes of the facet joints.  The disc bulge was slightly asymmetric with a greater degree seen in the left neural foramen region.  Mild canal stenosis was suggested with moderate left and mild right foraminal stenosis.  At L5-S1, the MRI showed a mild facet joint degenerative change.  A broad-based disc bulge was identified with a focal area of protrusion seen in the left paracentral region extending into the left neural foramen.  No significant spinal canal stenosis was noted.  However, the disc abnormality contacted the left S1 nerve root, without obvious deviation noted.  Mild left foraminal stenosis was noted.  No significant right foraminal stenosis was seen.  The concluding impression of the lumbar region MRI was multilevel degenerative disc and degenerative joint disease of the lumbar spine affecting levels L3-S1 with varying degrees of spinal canal and foraminal stenosis. (Tr. 258-59).

In May of 2012, Claimant underwent a further MRI of the cervical spine.  At C3-C4, mild disc/osteophyte formation was noted with no significant spinal canal or foraminal stenosis.  The level appeared stable.  At C4-C5, disc/osteophyte complex was identified

with mild spinal canal stenosis and mild bilateral foraminal stenosis. The degree of spinal canal stenosis was improved. At C5-C6, disc/osteophyte complex was noted with mild right and moderate left foraminal stenosis. Mild spinal canal stenosis was seen. These findings represented an increase from the prior examination. At C6-C7, disc/osteophyte complex was identified with moderate spinal canal stenosis identified as well as some mild flattening of the anterior aspect of the cervical spinal cord. Severe bilateral foraminal stenosis was noted, all of which showed an increase at this level. The impression was multilevel spondylosis of the cervical spine, creating varying degrees of spinal canal and foraminal stenosis. Multiple levels had worsened since the previous examination with improvement at C4-C5. (Tr. 256-57).

Also in May of 2012, an additional MRI was performed on Claimant's lumbar spine. At L2-L3, a mild broad-based disc bulge was identified. No facet joint degeneration was noted. No significant spinal canal or foraminal stenosis was identified. This disc bulge was noted as "new." At L3-L4, a broad-based disc bulge was identified as well as mild facet joint degenerative changes. Mild spinal canal stenosis was noted. No significant foraminal stenosis was identified. The condition was found to be stable. At L4-L5, the MRI revealed a broad-based disc bulge with mild degenerative changes of the facet joints. The disc bulge was

asymmetric on the left, extending into the neural foramen. Mild spinal canal stenosis was noted. Moderate left and mild to moderate right foraminal stenosis was identified. No significant change was noted. At L5-S1, a broad-based disc bulge was identified with some asymmetry seen left paracentrally extending into the neural foramen. This contacted the left S1 nerve root, but did not deviate that structure. No mass effect or contact with the right S1 nerve root was noted. No spinal canal stenosis was noted. Moderate left foraminal stenosis was noted. No significant right foraminal stenosis was suggested. No significant interval change was appreciated. The concluding impression from this MRI was a multilevel degenerative disc and degenerative joint disease of the lumbar spine, with new disc bulging at L2-L3, creating no significant stenosis. (Tr. 252-53).

These conditions were also noted in the record to cause Claimant functional limitations. Dr. Joseph Coffman found Claimant suffered from muscle spasms with mild pain with motion in February and March of 2010. (Tr. 266, 268). Also, in April of 2010, Dr. Timothy L. Huettner found diminished pulses in Claimant's feet and ankles, absent reflexes in the triceps, cervical spine tenderness with moderate decreased motion in all directions, tenderness in the thoracic and lumbar spines and a moderate decrease in forward flexion and marked decrease in lateral flexion and extension of the

9

lumbar spine. Dr. Huettner noted Claimant could only walk 25 feet in 7.53 seconds. (Tr. 414).

Additionally, Dr. Jeff Halford, who administered epidural steroid injections to Claimant from November of 2010 through September of 2012, also repeatedly noted diminished reflexes, and cervical and lumbar tenderness with decreased range of motion. (Tr. 442, 444, 446, 448, 450, 452, 454, 456, 459, 462).

Claimant also suffered from wrist and finger joint pain, tenderness, and swelling. (Tr. 276, 414, 417). Dr. Halford also found that Claimant had moderately severe right and mild left median neuropathy in the wrists suggesting carpal tunnel syndrome. He recommended that release surgery be considered if the condition continued. (Tr. 457).

The common aspect of these findings is the ALJ's failure to note many of them and to only concentrate on the aspects of the reports which supported a finding of no disability. (Tr. 18-21). Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical

10

opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). On remand, the ALJ should consider the effect of the consistent findings of limitation in Claimant's cervical and lumbar spine as well as her upper extremities and the supporting evidence for such findings. This evidence should be considered in reassessing Claimant's RFC.

**Credibility Determination**

Claimant also challenges the adequacy of the ALJ's credibility findings. Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims – what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). On remand, the ALJ shall apply the new guidelines under Soc. Sec. R. 16-3p in evaluating Claimant's testimony regarding "subjective symptoms".

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

11

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE